Good morning, Mr. Billman. Good morning, Your Honor. Thank you, sir. Would you please proceed? Thank you, Your Honor. I want to thank the Court for the opportunity to explain why the final decision of the Commissioner in this case should not only be overturned, but it should be remanded solely for the purpose of payment of benefits. This result revolves largely around the Commissioner's dismissive one-sentence handling of the treating physician opinion of Dr. Giblotto of the Sheltering Arms Rehabilitative Hospital here in Richmond. While it's just one sentence, the ALJ manages to do two things here. One is he uses a completely illegal standard of law. And then secondly, he proffers a single factual reason for dismissing Dr. Giblotto's opinions, but he offers absolutely no evidentiary support for that reason. Well, you know, it would be helpful, Mr. Billman, if you could focus then on what our case of Mascio says and what is necessary in order to establish harmless error under Mascio. Because there's no question that, at least, I don't want to say no question, but it appears to me that there was a problem in how the administrative law judge used the residual functional capacity in terms of assessing her credibility. But our decision in Mascio says that this can be harmless error if there are sufficient other reasons on the record. So if you could at least address that in your presentation, why there weren't sufficient other reasons. I'd be happy to, Your Honor. Again, this involves the ALJ's single sentence handling of Dr. Giblotto's opinion, which reads as follows. The undersigned gave Dr. Giblotto's opinion little weight because, one, the claimant reported limitations were not supported by his office notes. And, two, they were not consistent with the residual functional capacity rendered in this decision. The latter clause, of course, is the Mascio error, the Mascio boilerplate language that this Court disapproved. So in Mascio, the Court said that the ALJ can still be taken off the hook if he addressed the credibility. In Mascio, it was a credibility determination, not a treating physician opinion. But the ALJ can be taken off the hook if he properly addressed it elsewhere. Well, the only elsewhere in this case is this phrase, the claimant's reported limitations were not supported by his office notes. Now, that's a reason, and that's fine. He can give a reason. But in this Court's recent opinion in June of Monroe v. Colvin, a published opinion, the Court went on to say that just simply giving a reason is not good enough. You have to, and relying on a decision from the Seventh Circuit, the Clifford decision, the ALJ must not only give a reason, but he has to build a, quote, unquote, logical bridge. How detailed does he have to be? Because, and this is something I really think is unclear from the state of the law. Well, Dr. Gibalato listed, you know, the fact that the Ms. Colvin had, or excuse me, that Ms. Sharp had received, what, 80 to 90 percent reduction in her pain through medications, that she was able to do certain things well on her good days, that had given some, mainly, though, I think what the inconsistency was this 80 to 90 percent, that if she could get that kind of relief through medication, was that then consistent with his stated opinion that she couldn't perform her work? Well, first of all. And so how detailed, under the state of the law in the Fourth Circuit, how detailed does the ALJ have to be when there is something very apparent in the notes of Dr. Gibalato that does suggest an inconsistency? You're saying that the ALJ has to say why. And I guess maybe this case gives us the opportunity to say whether the ALJ has to say why. So tell me, why does the ALJ have to say why? I think this court. What in the state of the law directs that as a requirement? I think this court has already said what the state of the law is in the Monroe opinion, where you stated the assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts, e.g., laboratory findings, and non-medical evidence, e.g., daily activities and observations. What Your Honor is telling me is that those things do exist in the record, and they do, and they're pointed out by the defendant or the appellee in the brief, and I intend to address that in a moment. Maybe I'm misreading the record, but it seems to me that he cited three reasons. One, the conservative treatment regimen. Two, the ability for her to take care of her personal needs, et cetera. And that, most importantly, her subjective complaints are out of proportion, too, and not fully supported by the objective medical evidence. What more could he say? Well, Your Honor, both of those reasons were used by the ALJ to address Ms. Sharpe's credibility, not the weight to be given to the opinions of Dr. Gibilotto. The only reason offered by the ALJ with respect to Dr. Gibilotto's opinion was simply that it was, quote, unquote, not supported by his office notes. Now, Judge Kannon has pointed out that there are things in the record that might support what the ALJ, flesh out, if you will, the not supported by the office notes. But it's not in the ALJ's decision, and we're limited to looking at the ALJ's decision. Judge Kannon, I think, was also asking you what support you have for how specific it needs to be, the ALJ's decision. And I think, doesn't the CFR list six factors that the ALJ needs to consider regarding the treating source and doesn't our opinion in Radford say the record should include a discussion of which evidence the ALJ found credible and why and specific application of the pertinent legal requirements to the record evidence? Wouldn't that be helpful to you? Yes. Okay, but does that answer, though, the harmless error inquiry? Because there's no question that our law does say that those things need to be done. But in a harmless error analysis, as I understand it, the court is looking through the record to see if there are other reasons why the error acknowledged under our law could have been harmless. So I don't think a harmless error analysis, from your point of view, can rely on the fact that there was error. We know there was error. The question is, was it harmless? Well, the evidence that the court seems to be looking at comes from the list of evidence in the defendant's brief, the reference you made to the relief from treatment, for example. But if you look at the entire list, the defendant offers you 29 different pages of evidence that ostensibly supports this position. The relief of treatment is 15 of those pages. But if you look at that list, 26 out of the 29 pages the defendant gave you all come from records that are prior to the time that Ms. Sharp said she became disabled. That's irrelevant. The 15 pages of quote-unquote relief, actually when it says 60 or 70 or 80 or 90 percent relief, it's an answer to a question on the form, in the last 24 hours how much relief have you received? In the last 24 hours. But on that very same page, take for example page 300 of the record. On that very same page above that, it asks what was your worst pain in the last 30 days? What was your best pain in the last 30 days? What was your average pain in the last 30 days? At page 300, the worst pain was 9 out of 10 in the last 30 days. The best pain was 5 out of 10, and the average pain was 7 out of 10. That's Ms. Sharp. That's correct. Right. That's correct. Can I have a more fundamental question? Sure. Did you raise the Mascio argument before the district court? The Mascio opinion was actually issued two days after I filed my objections. And two weeks before the district court opinion. Correct. If you knew it was two days after you filed your objection, did you not follow up and raise Mascio before the district court issued its opinion? I didn't. And if you did not, why isn't that argument waived? Because I had already filed my objections. But the district court hadn't issued its opinion yet, right? Correct. It issued its opinion two weeks after Mascio. Correct. Well, I think the basic error here is not Mascio, raising Mascio as precedent. It's just how the administrative law judge went about articulating the reasons for demoting Dr. Giblotto's opinion. Right. Under your argument, you could still win without the Mascio reasoning. Correct. Correct. Absolutely. So I think what we know is that the administrative law judge did not offer sufficient reasons for demoting Dr. Giblotto's opinion. And since we know that to be the case, the question is really what's the remedy here? And the remedy should be reversal because there's no other viable reason for going through another administrative process. Her DLI was five years ago. The application was six years ago. Sir, are you saying, I'm sorry, Mr. Billman, are you saying that there's no place in the analysis here today for Dr. Wartella's opinion? Dr. Wartella, I believe, was a That's the doctor who said that she, that Ms. Sharp tended to, if it is a word, catastrophize her pain. I believe Is there any place in this analysis from your perspective for that opinion? I don't think so, Your Honor, because Dr. Wartella was not addressing, I don't believe, the fibromyalgia and is certainly not a specialist in the area such as Dr. Giblotto. But it addresses the credibility, though, doesn't it? It was, again, not a reason proffered by the administrative law judge and is not something that we can backfill under the Radford decision, for example. Okay. I see my time is up. Thank you. Ms. Wu. Thank you. Good morning. May it please the Court, I'm Elizabeth Wu and I represent the Commissioner of Social Security. I believe Judge Keenan had the question, how much is enough in terms of the ALJ's decision? And I believe the short answer is the ALJ's decision has to be enough to provide an opportunity for this Court to engage in a meaningful judicial review. And this was done in this case. In this case, the law tells us that the Court has to look to the entire record. And here the ALJ in his decision told us where specifically to look. He uses a general rubric at times of the objective medical record, but he also then points specifically, and he includes some discussion as well, to Dr. Gibellato's office notes, to the psychological evaluation. And it is significant that the psychologist that was evaluating Ms. Sharp found her to catastrophize her pain. And that's because pain is what is at issue here. Let me go into those more specifics, though, in assessing her credibility, not in assessing Dr. Gibellato's opinion. In fact, in Dr. Gibellato's opinion, the only thing he says is, the district court ALJ said was, the undersign gave Dr. Gibellato's opinions little weight because the claimant's reported limitations were not supported by his office notes.  That is what the ALJ... Is that enough? What he's doing right there is telling us, let's look to Dr. Gibellato's office notes. And when the reviewing court does that, what one finds is in the history, in the course of treatment with Dr. Gibellato, there were approximately 30 visits, or there were 30 visits that Ms. Sharp had with Dr. Gibellato. And again, we have to keep in mind what we're having... What's really at issue here in terms of Ms. Sharp's limitations, her functional limitations comes from her pain, specifically from the fibromyalgia. What about our case law that says the notice of the determination with regard to the treating physician must give specific reasons for the weight given, and sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinions and the reasons for that weight? And then again, in Radford, we say, and why? And specific applications. Office notes are not... That's a general... I think you even used earlier, you said a general rubric, the office notes. But it has to be specific. What part of the office notes? Doesn't it, or not? What I was saying earlier was the objective medical evidence, that term is probably more general, more specifically, the ALJ drills down and says, I find this inconsistent. I find Dr. Gibilotto, part of Dr. Gibilotto's opinion also, it's not the entire one. He agreed with Dr. Gibilotto that Ms. Sharp was limited to the most restrictive, least exertional type of work, which is sedentary. His disagreement came with, can she maintain a full work day, a full work week? And so when the ALJ directs us to the office notes, and that's very specific. One looks at the office notes, there... Well, it really isn't specific in the sense that we're required to go out and kind of search the notes to find the most damning points and maybe make our assessment of what we think is the most unhelpful and most inconsistent. And then are we putting our judgment on the case rather than looking at the ALJ's judgment? It seems to me that there is some problem there. And so I think you're almost backed into a harmless error argument. Tell me why you're not. And then I think you do need to address whether the error was harmless. Yes. If I may, first, to the first concern that you had, Judge Keenan. If we don't look specifically, if we're just talking theoretically and we're saying, well, there's an ALJ here and he just says, look to the objective medical evidence, look to a note. You know, maybe we can have a theoretical argument as to whether or not the court has to engage in some type of post-talk rationalization. But that is not the case here. And specifically here in the ALJ's opinion, the ALJ does provide in the third full paragraph of his opinion, which is found in Joint Appendix, page 13. And he starts off by talking about the objective medical evidence reflects that she has, you know, these debilitating conditions, that her impairments were treated conservatively with medication, physical therapy, lumbar and facet injections. Goes on to find that the objective tests that were given were normal, that she. That's all factual. He's just restating the record. He's not explaining why he's disagreeing with the treating physician, is he? Well, when he goes on and talks about the treating physician and then says, you know, the treating physician, that part of the treating physician's opinion that says she cannot work a full workday is inconsistent with these notes. I think necessarily we must go to those notes. And if one considers the entire, the notes as a whole, this is, there's no need to even cherry pick and find what might be damning to Ms. Sharp or helpful to the Commissioner. In determining whether the error is harmless, we're going to have to make some assessments, aren't we? Yes, Your Honor. And that's because of these visits, of the 30 visits, if you go into the specifics of them, 21 of those 30 times, Ms. Sharp actually assigns a subjective, qualitative percentage to her pain relief. And, again, it's crucial here that we're talking about pain relief because Ms. Sharp here is not, the issue of extreme fatigue from her fibromyalgia, for instance, is not what is at issue here. The only thing that would keep her from maintaining this full work week or a full workday would be, can she manage her pain? And the objective medical record shows that medications and the treatment that she received over this period of time overwhelmingly provides ample support that she's able to manage her pain. Of the 21 times that she assigns a qualitative measure to her pain, 17 of those times she says, I have gotten between 70 to 100 percent relief by medication, by the treatment that I'm undergoing. Two of those times it was 60 percent relief, and even with respect to one of those 60 percent, she said, I'm still very active and I'm working through the pain. One time it was 50 percent relief, and one time out of that 21, it was 40 percent. And she said- How does all of this go to the ALJ's assessment of her credibility as separate and apart from his assessment of how much weight he gives to the treating physician? No, Your Honor, because I believe the ALJ, and this is why it is not a Mascio issue or problem, because even though he used that boilerplate, he said when he was assigning little weight to Dr. Giobellato, the ALJ specifically said, I'm assigning little weight because it's inconsistent with Dr. Giobellato's own office notes. So it goes, I mean, I believe that it also goes to his assessment later on. He does mention the objective medical record being inconsistent with Ms. Sharpe's subjective complaints of pain, but he also gives a very specific reason, which takes this, if there is error, into the realm of harmless error, because as Mascio found, so long as credibility, in the case of Mascio, can be assessed elsewhere, the use of the boilerplate is not, per se, reversible error. Okay. So that's the answer to Judge Keenan's question about harmlessness. Yes. And also, I think factually it's distinguishable from Mascio because, you know, in Mascio the danger that this Court was trying to guard against, that it foresaw with the use of the boilerplate, not this Court, excuse me, the Seventh Circuit, was that the Seventh Circuit talked about, and this Court cited to that, talked about that the danger of finding the RFC first, the residual functional capacity, before assessing credibility would get things completely backwards. That's not even at issue in this case. In this case, the ALJ, and there's no assignment of error by Ms. Sharp as to this, the ALJ went through his function-by-function analysis, and then the ALJ is going through and is assigning different weights to the different medical opinions. And it's also noteworthy here that, you know, the ALJ, very specifically in his decision, recognized that Ms. Sharp experienced widespread pain, but he accounted for it. You know, he, in fact, rejected the opinions of the state agency experts who said, she can do light work. The ALJ took into account her subjective pain complaints. He referenced numerous times in his decision, she has good days, she has bad days. But that's why it's critical to kind of look at the specifics of Dr. DiBellato's notes that the ALJ cites to, because you can see by her own admission that she's having more good days, or she has the ability to have good days because the treatment is managing her pain. And with respect to the credibility analysis, the credibility of the plaintiff's credibility, the ALJ gave more than one reason. He said her subjective complaints of pain are not consistent with her reported activities of daily living. Again, explicitly accounting for the fact that we understand that on some days, these daily living activities are different because she has a bad day, her pain is not as controlled. And it's also inconsistent with her treatment, that the conservative treatment she was receiving, namely medication, and she also received some injections, that that was able to effectively manage her pain. It's not a measure of her pain, but it does, in fact, show that she is able to do more than perhaps her subjective complaints of being completely disabled would otherwise suggest. So what Ms. Sharp is ultimately asking the court to do here today is to impermissibly reweigh the evidence and to make a credibility determination that the law on the case law actually forbids. Because Ms. Sharp can disagree with the ALJ's evaluation of the record, but if that evaluation is supported by substantial evidence, and where even conflicting evidence could lead reasonable minds to differ, the commissioner's decision is given great deference, and we would ask the court to uphold that. And I see my time is almost up, and I don't know if the court has any other questions. Thank you. Mr. Gilman, Ms. Wu concluded with a point we haven't really addressed here. I haven't heard either one of you speak to until just then, and substantial evidence is a pretty low bar. How does that figure into your analysis here? Well, substantial evidence is a low bar, but I think this goes directly to the point that I wanted to cover here in my final three minutes. And I promise I'm going to get to this. I finally understand your question is, is not supported by his office notes enough? And it certainly is not under this Court's decision in Monroe. In Monroe, it was held the ALJ stated he gave his opinion only limited weight based on a determination that, quote, the objective evidence or the claimant's treatment history did not support the examiner's findings, close quote. However, the ALJ did not specify what objective evidence or what aspects. Okay. Let me play devil's advocate, though. That was just a purely conclusory statement. It's an issue here. It's no different than this one. This is a little different because it's saying, Dr. Giobalato's saying one thing in his opinion and saying something different as reflected by his office notes. All right. So that's a little different. So let's look at the substantiality of those office notes. Each and every one of the, I'm sorry, 20 of the three reasons the commissioner gives you for buttressing or trying to prop up the ALJ's decision in his office notes. She offers diagnostic tests. Well, diagnostic, and the diagnostic tests that she offers are all MRIs, which have no bearing on fibromyalgia. That's in page 25 of the defendant's brief. She also offers activities that are found in the notes, such as using a post hole digger, helping kids fish, camping trip and lifting boxes and mowing lawns, all of which occurred at least a year before Ms. Sharp said she became disabled. And then finally we get to this relief of treatment thing, which I hope I made clear in my opening remarks. That was in answer to a question of how much relief have you had in the last 24 hours. But when you look at the treatment note itself, which encompasses the last 30 days, the questions about her problems in the last 30 days paint a very, very different picture. Not to mention that each and every one of these so-called relief of treatment or control of pain remarks in the records are all, again, taken from notes that are well before when Ms. Sharp said she became disabled. So there is no substantial evidence, and that's why there's no point in sending it back. Okay, Mr. Billman, thank you very much, sir. I appreciate the argument from both parties. We'll come down to Greek Council and then we'll take a short recess before calling our third case.
judges: Barbara Milano Keenan, Henry F. Floyd, Stephanie D. Thacker